Ex PARTE L. L. MESSER.

Opinion Filed February 11, 1924.

This case was decided by Division B.

1. It is not the function of a writ of habeas corpus to review errors of procedure, but if a judgment of conviction is assailed on the ground that the charge constitutes no offense because based on an invalid statute, it may be collaterally attacked and habeas corpus is a proper remedy.

2. No duly enacted statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that under any rational view that may be taken of the statute, it is in positive conflict with some identified or designated provision of constitutional law.

3. When, by clear and indubitable demonstration, a statute is opposed to the Constitution, the court has no choice but to say so, since the Constitution by its own terms is the supreme law, and that which is not supreme must yield to that which is. Adkins v. Children's Hospital, 43 Sup. Ct. Rep. 394.

4. Where the terms of the statute clearly conflict with an applicable provision of the Constitution, State or Federal, it is the duty of the court, in proceedings where the matter is

properly presented, to "support, protect and defend the Constitution" by giving effect to its provisions, even if in doing so the statute is held to be inoperative.

5.  The liberty of individuals protected by sections 1 and 12 of the Declaration of Rights of the Constitution of the State of Florida and by the Fourteenth Amendment of the Constitution of the United States, may not be interfered with under the guise of protecting the public interest by legislative action which is arbitrary or without reasonable relation to some object within the competency of the State to effect.

6.  The right of the employer, on the one hand, and of the employee, on the other, to contract about his affairs, is part of the liberty of the individual protected by the guaranty of the due process clause of the Fourteenth Amendment of the Constitution.   Chas. Wolf. Pack. Co. v. Court of Industrial Relations, 43 Sup. Ct. Rep. 630.

7.  While there is no such thing as absolute freedom of contract, freedom is the general rule, and restraint is the exception, and must not be arbitrary or unreasonable, and can be justified only by exceptional circumstances.   Chas. Wolf. Pack. Co. v. Court of Industrial Relations, *supra*.

8.  Included in the right of personal liberty and the right of private property—partaking of the nature of each—is the right to make contracts for the acquicition of property, chief among which is that of personal employment by which labor and other services are exchanged for money or other forms of property.   Coppage v. Kansas, 236 U. S. 1.

9.  To the extent that Chapter 9297, Laws of Florida, restrains a resident of the county, desiring a resident of another county of this State to render service for him which may be classified as labor, it deprives the proposed employer of liberty, which deprivation conceivably would in many instances be arbitrary or unreasonable, and to the extent that opportunities and avenues of employment are, by the restraining influence of the statute, arbitrarily or unreasonably diminished or denied to persons who exchange their services for money or other forms

of property, the statute is an unwarranted interference with an essentially innocent exercise of liberty of contract, and is therefore inoperative.

A case of original jurisdiction.

Petitioner discharged.

*Carter* & *Solomon,* for Petitioner;

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant Attorney General, for the State.

WEST, J.—Upon an affidavit charging him with having committed the offense denounced by Chapter 9297, Acts of 1923, Laws of Florida, the petitioner was tried and convicted in the county judge's court of Jackson County, Florida. On petition alleging the statute to be void because repugnant to provisions of the State and Federal Constitutions, and petitioner's detention unlawful, a writ of habeas corpus was issued by a member of this court, returnable before the court. For return to the writ the sheriff shows that he holds petitioner in custody by virtue of a commitment issued out of the county judge's court of Jackson County. From a copy of the commitment and affidavit charging the offense, made a part of the return, it appears that the bases of the charge are acts attempted to be made unlawful by the statute. For convenience the statute is reproduced here:

"Chapter 9297—(No. 179.)

"An Act to Regulate the Employment of Laborers to go from One County in Florida to Another County in Florida to Perform Labor, and to Provide Penalties for the Violation of this Act.

"Be it Enacted by the Legislature of the State of Florida:

"Section 1. That from and after the passage of this Act it shall be lawful for any person who complies with the provisions of this Act to employ laborers in one county in this State to go to another in this State to perform labor, and it shall be unlawful for any person to employ laborers in one county in this State to perform labor in another county in this State without complying with the provisions of this Act.

"Sec. 2. Before any person shall employ or attempt to employ laborers in one county in this State to go to another county in this State to perform labor such person shall present to the sheriff of the county from which he expects to procure such laborers a written statement giving his name, the name of his employer, or of the person, firm or corporation for whom such laborers will be employed to work, the number of laborers which he seeks to employ, and the location of the place at which such laborers will be required to perform labor. He shall pay the sheriff a fee of $1.00 for filing his statement.

"Sec. 3. Such person shall not enter on or upon the private premises of any person in the county without the written permission of the person in possession of such premises for the purpose of discussing the employment of any laborer or laborers upon such premises.

"Sec. 4. The sheriff of each county shall keep on file in his office, open to public inspection, all statements required to be filed under the provisions of this Act.

"Sec. 5. None of the provisions of this Act shall apply to any person employing or removing any laborer or person from one county to another, which laborer or person, has for thirty days prior to the date of such removal been in the employment of and working for the person desiring

to remove said laborer or person from said county to another county in this State.

"Sec. 6. Any person who violates the provisions of this Act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding five hundred dollars and costs, or in default of the payment of such fine, be imprisoned not more than six months in the county jail.

"Sec. 7. This Act shall not apply to common carriers and their agents.

"Sec. 8. This Act shall take effect immediately upon its passage and approval by the Governor, or upon its becoming a law without the Governor's approval.

"Approved June 8, 1923."

It is alleged generally in the application for the writ that this statute violates rights guaranteed to petitioner by the Constitution of Florida and of the United States, that it is in conflict with sections 1 and 4 of the Declaration of Rights of the Constitution of Florida, and with the provisions of the Fourteenth Amendment to the Federal Constitution forbidding any State "to deprive any person of life, liberty or property without due process of law." The twelfth section of the Declaration of Rights of the Florida Constitution, the equivalent of the quoted clause of the Federal Constitution, is not mentioned, but in *habeas corpus* general allegations that petitioner's detention and custody are unlawful because in violation of rights guaranteed by the Constitution may be regarded as sufficient.

It is not the function of a writ of *habeas corpus* to review errors of procedure. But if a judgment of conviction is assailed on the ground that the charge constitutes no offense because based on an invalid statute, *habeas corpus* is a proper remedy. If the statute is invalid the judgment is void and may be collaterally attacked. Harper v. Gal-

loway, 58 Fla. 255, 51 South. Rep. 226; *Ex Parte* Knight, 52 Fla. 144, 41 South. Rep. 786; *Ex Parte* Bowen, 25 Fla. 214, 6 South. Rep. 65.

The ground upon which the power and duty of a court to declare invalid a legislative enactment is briefly stated in the recent case of Adkins v. Children's Hospital, 43 Sup. Ct. Rep. 394. Speaking through Mr. Justice Sutherland, the court said: ''The judicial duty of passing upon the constitutionality of an act of Congress is one of great gravity and delicacy. The statute here in question has successfully borne the scrutiny of the legislative branch of the government, which, by enacting it, has affirmed its validity, and that determination must be given great weight. This court, by an unbroken line of decisions from Chief Justice Marshall to the present day, has steadily adhered to the rule that every possible presumption is in favor of the validity of an act of Congress until overcome beyond rational doubt. But, if by clear and indubitable demonstration a statute be opposed to the Constitution, we have no choice but to say so. The Constitution, by its own terms, is the supreme law of the land, emanating from the people, the repository of ultimate sovereignty under our form of government. A congressional statute, on the other hand, is the act of an agency of this sovereign authority, and if it conflict with the Constitution must fall; for that which is not supreme must yield to that which is. To hold it invalid (if it be invalid) is a plain exercise of the judicial power—that power vested in courts to enable them to administer justice according to law. From the authority to ascertain and determine the law in a given case, there necessarily results, in case of conflict, the duty to declare and enforce the rule of the supreme law and reject that of an inferior act of legislation which, transcending the Constitution, is of no effect and binding on no one. This

4—Vol. 87.

is not the exercise of a substantive power to review and nullify acts of Congress, for no such substantive power exists. It is simply a necessary concomitant of the power to hear and dispose of a case or controversy properly before the court, to the determination of which must be brought the test and measure of the law.'' The oath required of a State officer is to support, protect and defend the Constitution and government of the United States and of the State of Florida. Sec. 2, Art. 16, Const. of Fla.

The challenged statute is not limited in its application to the employment of any class of labor, but applies to every employment that may be classified as labor except employment by common carriers and their agents. It applies with equal force whether the number to be employed is one or more, or whether the time of employment is one day or indefinite or for a fixed period.

Under its terms, before one person desiring to employ another to perform labor of any kind in a county in the State other than that in which the contract of employment is negotiated, he must first ''present to the sheriff of the county from which he expects to procure such laborers a written statement giving his name, the name of his employer, or of the person, firm or corporation for whom such laborers will be employed to work, the number of laborers which he seeks to employ, and the location of the place at which such laborers will be required to perform labor.'' failing in which, his act is a crime and he is subject to fine and imprisonment under section 6 of the statute.

There is nothing in the record to indicate that the persons employed, or sought to be employed, in Jackson County were to go from Jackson County to Bay County for the performance of public work or the performance of labor in any trade or calling subject to public regulations or to perform labor in any business affected with a

public interest.   So far as the record discloses the persons employed, or sought to be employed, are of full age and under no legal disability, and the employment contemplated is not of such character as to in any wise concern public interest.   The charge is that petitioner did unlawfully employ, or attempt to employ, laborers in Jackson County, Florida, to go into another county, namely, Bay County, Florida, there to perform labor, when he, the said petitioner, had not prior thereto complied with the requirements of section 2 of the statute.   The question, therefore, is whether under these circumstances it is within the competency of the legislature to make negotiations of this character a crime.

In Meyer v. State of Nebraska, 43 Sup. Ct. Rep. 625, in considering whether the enactment of a statute of the State of Nebraska relating to the teaching of foreign languages infringed the liberty guaranteed by the fourteenth amendment, the court, speaking through Mr. Justice McReynolds, said: "While this court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated.   Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.   (citing cases.)   The established doctrine is that this liberty may not be interferred with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect.

Determination by the legislature of what constitutes proper exercise of police power is not final or conclusive but is subject to supervision by the courts.''

In Chas. Wolff Packing Co. v. Court of Industrial Relations, 43 Sup.Ct. Rep. 630, in considering whether the Kansas Court of Industrial Relations act infringed the liberty guaranteed by the fourteenth amendment, speaking through Mr. Chief Justice Taft, the court said: ''While there is no such thing as absolute freedom of contract, and it is subject to a variety of restraints, they must not be arbitrary or unreasonable. Freedom is the general rule, and restraint the exception. The legislative authority to abridge can be justified only by exceptional circumstances.'' In that case it was held in effect that the right of an employee on the one hand and of the employer on the other to contract about their affairs is part of the liberty of the individual protected by the guarantee of the due process clause of the fourteenth amendment to the constitution of the United States.

In each of these cases the court held that the statute under consideration was repugnant to constitutional limitations and was therefore void.

In Coppage v. State of Kansas, 236 U. S. 1, the court said: ''Included in the right of personal liberty and the right of private property—partaking of the nature of each —is the right to make contracts for the acquisition of property. Chief among such contracts is that of personal employment, by which labor and other services are exchanged for money or other forms of property. If this right be struck down or abitrarily interferred with, there is a substantial impairment of liberty in the long-established constitutional sense.''

Labor, according to recognized authority, includes mental effort and intellectual exertion as well as physical toil.

So that, to the extent that this statute restrains a resident of one county, desiring the services of the resident of another county of this state under any circumstances to perform any kind of labor, it interferes with the liberty of the proposed employer, which conceivably would in many instances be unreasonable and productive of no benefit. And to the extent that opportunities and avenues of employment are, by the restraining influences of the requirements of the statute, arbitrarily or unreasonably denied or closed to persons who exchange their services for money or other forms of property, which includes a large proportion of the residents of the state, the statute is an unwarranted interference with an essentially innocent exercise of liberty of contract. It in no sense deals with hours of labor, or payment of wages. It has no relation to contracts of employment that may be immoral. It is not concerned with whether the place of employment is safe or sanitary. No such basis can be found for it. It attempts to deal with ordinary business relations of individuals which have heretofore been regarded as free from arbitrary governmental restriction because of constitutional limitations. It is, we think, clearly within the inhibitions of the constitutional guarantee of liberty of persons to contract, as construed by the cases cited which are binding upon this court, and therefore trangresses legislative power. It follows that the judgment of conviction of petitioner is void and that he should be discharged.

It is so ordered.

TAYLOR, C. J., and ELLIS and BROWNE, J. J., concur.

WHITFIELD and TERRELL, J. J., dissent.

WHITFIELD, J., dissenting.

The mere fact that a statutory police regulation of the exercise of a fundamental right causes inconvenience and requires the payment of a nominal fee, does not render the statute unconstitutional, when as in this case the enactment does not materially impair the fundamental right, is not merely arbitrary nor oppressive, and may conceivably serve a useful public purpose. In the cases referred to in the opinion of the court, the fundamental right of liberty of contract was held to be materially impaired or arbitrarily curtailed. See also Davidow v. Wadsworth Mfg. Co., 211 Mich. 90, 178 N. W. Rep. 776, 12 A. L. R. 605; State v. Martin, — Ind. —, 139 N. E. Rep. 282, 26 A. L. R. 1386, 1392.