D. C. COLEMAN, Sheriff, v. STATE, *ex rel.* J. D. CARVER.

161 So. 89.

Division B.

Opinion Filed April 5, 1935.

Rehearing Denied April 30, 1035.

654

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for Plaintiff in Error;

*Bart A. Riley* and *Arthur S. Friedman,* for Defendant in Error;

*Leonard Epstein* as *Amicus Curiae.*

BUFORD, J.—Defendant in error was informed against in the Criminal Court of Record of Dade County charged with violation of the provisions of Chapter 16066, Acts of the Legislature of 1933. Section 1 of that Act provides:

"It shall be unlawful to hold possession of lands or houses by any lessee whose lease has expired and no new lease thereon has been executed or agreed upon after ten days' written notice to vacate from the owner or his agent of such property to such lessee."

Section 2 provides that the violation of Section 1 shall constitute a misdemeanor and provides punishment therefor.

After being arrested the accused sued out writ of habeas corpus contending that the Act is unconstitutional. The return of the sheriff showed that petitioner was held under a capias issued out of a court of competent jurisdiction charged with the offense above referred to.

On hearing, Circuit Judge Thompson held the Act to be unconstitutional. Just what provision of the State or Federal Constitution is violated by the Act is not made to appear either in the judgment of the court below or in the briefs filed in this Court. It appears to us that the statute denounces a statutory trespass. It simply declares it to be unlawful for one who has held a lease of lands, or houses, and whose lease has expired and no new lease thereon has been executed or agreed upon to hold possession of such

lands, or houses, after ten days written notice from the owner, or his agent, to vacate such property.

Why it should not be unlawful, if the Legislature should think it wise to do so, for one to hold that of another to which the person holding has no right and after due and timely notice to relinquish such holding, we can see no good reason. Crimes from early days have been divided into things that are criminal because they are *mala in se* and crimes which are such because they are prohibited by statute or *mala prohibita*. The former class embraces those acts which are immoral or wrong in themselves such as burglary, larceny, arson, rape, murder and breaches of the peace; while the latter embraces those things which are prohibited by statute because they infringe upon the rights of others, though no moral turpitude may attach, and they are crimes only because they are prohibited by statute. See 4th Blackstone Commentary 8, Commonwealth v. Adams, 114 Mass. 323, 16 C. J. 38, 8 R. C. L. 55.

Unquestionably, it is within the province of the Legislature to declare acts to be criminal which were, prior to such declaration, merely civil wrongs. See State v. Hildenbrand, 62 Neb. 136, 87 N. W. 25; State v. Dowling, 92 Fla. 848, 110 Sou. 523. In the latter case we had under consideration the validity of Chapter 9288, Acts of 1923, Laws of Florida, which denounced as criminal the act of disposing of personal property subject to a written lien without the written consent of the lienee. Therein we said:

"The act in other words tends to stabilize the sale and barter in personal property under the lien or written conditional sale contract, and to fix its situs within the knowledge of the licensee or vendor while so burdened. It deals solely with property that is in its very nature perishable, is subject to rapid depreciation in value, is easily secluded,

and is readily transported from place to place. As to such property no good reason is indicated why the person, firm or corporation holding the lien or conditional sale contract should not be awarded the protection the Act affords.

"What then is the substance and spirit of the Act as thus analyzed? 'It is not the words of the law, but the internal sense of it that makes the law; the letter of the law is the body; the sense and reason of the law is the soul.' It is readily apparent that the sense and reason for the law here questioned is primarily the protection of those who advance money on personal property, or who are in the business of selling personal property and take a retained title note or conditional sale contract back as security for deferred payments. The Act in other words under such circumstances proceeds on the theory that both the lienor and the lienee and the vendor and the vendee have a substantial right or interest in the subject matter of the lien or sale and seeks to protect the lienee and the vendor against any undue advantage that might be taken on the part of the lienor or the vendee.

"Limitations on the freedom of contract, the use of property, the incidents of ownership of property and the right of the owner to dispose of his property may be said to be among the outstanding developments in the law of all English-speaking people during the last half century. In the beginning these limitations were conceived in terms of the abstract individual or debtor and were not always viewed by court or laity with favor, but the growth and complication of our economic order has witnessed a marked shift from the measurements of these limitations, in terms of the abstract individual to that of measuring them in terms of the social order or interest and when so measured they have generally been upheld. Such acts, no doubt like

many others, are at times exploited for base and selfish purposes; but this goes to the question of policy with which the Legislature alone is concerned. We fail to see where the Act in question imposes an unreasonable hardship on plaintiff in error in the use, ownership and disposition of her property, while on the other hand we think it imposes a reasonable limitation on the use of all personal property under lien, and was well within the inherent power of the Legislature to promulgate.

"It is next contended that Chapter 9288, Laws of Florida, is unconstitutional and void in that it amounts to conviction and imprisonment for debt where no fraud is charged.

"This assault is grounded on Section 16 of the Declaration of Rights of the Constitution of Florida, which is as follows: 'No person shall be imprisoned for debt except in case of fraud.' It is proper to note in this connection that the Federal Constitution carries no such provision.

"In support of this assignment it is first contended that the statute is invalid in that it omits and fails to require proof of the element of criminal or fraudulent intent. In response to this contention it is enough to say that the rule seems well settled that when a statute makes criminal an act not *malum in se* or infamous without requiring the act to be knowingly or willfully done, a criminal or fraudulent intent is not an element of the offense, and need not be proven. Mills v. State, 58 Fla. 74, 51 South. Rep. 278; Halstead v. State, 41 N. J. L. 552, 32 Am. St. Rep. 247; Haggerty v. St. Louis Ice Manufacturing & Storage Co., 143 Mo. 238, 44 S. W. Rep. 1114, 40 L. R. A. 151, 65 Am. St. Rep. 647; State v. Foster, 22 R. I. 163, 46 Atl. Rep. 833, 50 L. R. A. 339; Note Vol. 11 L. R. A. 807; 8 R. C. L. 62."

The right to contract is not involved in the case at bar

and neither is the construction of a contract involved here. The wisdom, policy and necessity of statutes are matters to be determined by the Legislature. See Bailey v. Van Heldt, 78 Fla. 337, 82 Sou. 789. The courts are bound to uphold the statute unless it is clearly made to appear to be beyond a reasonable doubt that it is unconstitutional. State v. Bryan, 50 Fla. 293, 39 Sou. 929; Stewart v. DeLand-Lake Helen Special Road & Bridge District, etc., 71. Fla. 158, 71 Sou. 42; Ex Parte Pricha, 70 Fla. 265, 70 Sou. 406.

One who comes into lawful possession of land otherwise than by the act of law and continues to occupy it after his right of occupancy has ceased and without any right or title in and to the land is a tenant at sufferance. Brown v. Markham, 56 Fla. 202, 48 Sou. 39. Tenancy at sufferance is not based on contract. A tenant at sufferance has no estate or title but only naked possession without right. Camp v. Ellis, 71 Fla. 193, 70 Sou. 1006.

In Baker v. Clifford-Mathews Inv. Co., 99 Fla. 1229, 128 Sou. 827, we said:

"A tenancy at sufferance is said to exist where a person comes into possession of lands lawfully and after his estate has ended holds over wrongfully."

So the holding possession of lands or houses under the conditions denounced in this statute has ever been held to be a wrongful holding. It is appropriating the rights of another. Sec. 5275 R. G. S., 7394 C. G. L., provides:

"Whoever forcibly enters into the possession of the lands and tenements of another, and does not, upon demand made by the party entitled to possession, vacate the same within four days after the demand, shall be punished by a fine not exceeding one thousand dollars."

Section 5276 R. G. S., 7395 C. G. L., is so much like the statute here under consideration that the reason for

the passage of the present statute is hardly discernible. It is as follows:

"Any tenant in possession of any parcel of land or tenement under a written lease, who shall hold possession of such property after the expiration of fifteen days after demand in writing made upon him by the owner or agent for such possession after the expiration of such lease, shall be punished by imprisonment not exceeding thirty days, or by fine not exceeding one hundred dollars."

Section 5252 R. G. S., 7371 C. G. L., provides as follows:

"Whoever willfully enters into the enclosed land and premises of another, or into any private residence, house, building or labor camp of another, which is occupied by the owner or his employees, being forbidden so to enter, or not being previously forbidden, is warned to depart therefrom and refuses to do so, or having departed re-enters without the previous consent of the owner, or having departed remains about in the vicinity, using profane or indecent language, shall be punished by imprisonment not exceeding six months, or by a fine not exceeding one hundred dollars."

In Monneyham v. Bowles, 72 Fla. 259, 72 Sou. 931, this Court having this section under consideration, said:

"The gravamen of the offense denounced by Section 3403 is the entry by one upon the enclosed land or premises of another occupied by the owner or his employees after having been forbidden to enter, or not having been previously forbidden refusing to depart therefrom after being warned to do so. It is difficult to perceive how an entry by one upon the enclosed premises of another after having been forbidden so to enter, could be otherwise than willful, unless the accused was mentally irresponsible, in which case

his mental condition would be held to exonerate him from the charge of criminality."

It is contended that the statute is invalid because it is apparent that its terms are for the protection of the lessor in the enjoyment of his property. Conceding that to be true, we find no reason for the deduction that the statute is therefore invalid. All statutes against trespass are primarily for the protection of the individual property owner, but they are also for the purpose of protecting society against breaches of the peace which might occur if the owner of the property is required to protect his rights by force of arms.

We are unable to find wherein the statute violates the organic law. Therefore, the judgment should be reversed and the cause remanded with directions that the petitioner be remanded to the custody of the sheriff to be dealt with according to law.

It is so ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., dissents.

BROWN, J. (dissenting).—I find myself in full sympathy with the views of the trial court, which, when considered in the light of the declaration of rights, lead to the conclusion that Chapter 16066 is invalid.

In connection with his order discharging the prisoner from custody, Circuit Judge Thompson rendered an opinion in which, among other things, he said:

"It will be observed that the Legislature did not undertake to denominate such holding over of premises as even a technical trespass; nor does the Act prescribe any wrongful 'intent' to commit a trespass, or to commit any other

known offense to the law as a prerequisite to a conviction as for a misdemeanor under the provisions of said Act of the Legislature. This Court takes cognizance of the fact that all indentures of leaseholds usually provide, without exception, that upon the termination of the lease contract that the lessee will quit and deliver up said premises to the lessor. And, in the absence of an express contract, written or oral, to this effect, it is nevertheless the implied obligation of the lessee so to deliver said premises, and courts have repeatedly held that such implication of law is just as binding upon the lessee as if expressly written into the lease obligation. The question presented and argued before this Court is as to whether it was the intent of the Legislature to punish, as for a misdemeanor, acts denominated by the Legislature as a crime, or whether the real purpose, intent and effect of the Act is to assist lessors, at public expense, in regaining possession of premises under indentures of lease, where the lessee refuses to live up to his civil contract to quit and surrender the premises. After a careful consideration of the briefs and all authorities cited by counsel for the relator and respondent and, also, by counsel who presented briefs, *amicus curiae,* I am of the opinion that the Act comes squarely under the latter category and is clearly unconstitutional.

"While I recognize the rule laid down by the Supreme Court of Florida that the law is a progressive science and we must keep abreast of our advancing civilization, I fail to find any sound reason in the instant case to depart from those fundamental distinctions heretofore recognized, fixing the line of demarcation between civil wrongs or torts, and crimes. The distinction has never been more aptly stated than by Sir William Blackstone in his commentaries, wherein it is thus laid down:

" 'The distinction of public wrongs from private, of crimes and misdemeanors from civil injuries, seems principally to consist in this: that private wrongs or civil injuries are an infringement or privation of the civil rights which belong to individuals, considered merely as individuals; public wrongs, or crimes and misdemeanors, are a breach and violation of the public rights and duties due to the whole community, considered as a community, in its social aggregate capacity. *As, if I detain a field from another man, to which the law has given him a right, this is a civil injury, and not a crime; for here only the right of an individual is concerned, and it is immaterial to the public which of us is in possession of the land.'*

"I am convinced that the purpose of the Act is not to punish for crimes against society, but to enable the recapture of premises peacefully obtained under contract, but wrongfully withheld because of the civil violation of the solemn obligations of such contract. It is difficult to understand how the commonwealth of Florida could be interested or concerned in punishing, as for a crime, the violations of such contract, especially in view of the fact that lessors now have full, adequate and speedy remedies upon the civil side of the Court for the wrongs suffered.

"In effect, to uphold this Act would establish an undertaking on the part of the State, through its criminal processes, and at *public expense,* to grant redress to a comparatively small class of individuals for the violation of *private* contracts. There should be an end to such legislation."

It is true, Judge Thompson did not point out the particular provisions of the Constitution which he deemed to have been violated, but I feel sure that he had in mind those provisions of the declaration of rights contained in our

Constitution which protect the basic and inalienable personal and property rights of the individual citizen.

In the case of State, *ex rel*. Davis, Attorney General, v. City of Stuart, 97 Fla. 69, at pages 101-103; 120 So. 335, at page 347, this Court said:

"Primacy of position in our State Constitution is accorded to the Declaration of Rights. It comes first, immediately after the preamble. These Declarations, comprising 24 short but incisive sections, include the following provisions: Section 1. 'All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety.' Here we have an implied guaranty of the equal protection of the laws, at least as to the class of rights mentioned, similar to that expressly given in the Fourteenth Amendment to the Federal Constitution. See A. C. L. R. Co. v. City of Lakeland, 94 Fla. 347, 115 So. 669, Text 685. In Section 2 it is said that 'government is instituted for the protection, security and benefit of the citizens.' Section 4. 'All courts in this State shall be open, so that every person for any injury done him in his lands, goods, persons or reputation shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay.' Section 12 provides that 'No person shall * * * be deprived of life, liberty or property without due process of law; nor shall private property be taken without just compensation.' And Section 22 guarantees 'the right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches.' The Declarations close with the admonition in Section 24 that 'This enunciation of rights shall not be construed to impair or deny others retained by the people.'" * * *

"These Declaration of Rights, those omitted as well as those above quoted, have cost much, and breathe the spirit of that sturdy and self reliant philosophy of individualism which underlies and supports our entire system of government. No race of hothouse plants could ever have produced and compelled the recognition of such a stalwart set of basis principles, and no such race can preserve them. They say to arbitrary and autocratic power, from whatever official quarter it may advance to invade these vital rights of personal liberty and private property, 'Thus far shalt thou come, but no farther.' They constitute a limitation upon the powers of each and all the departments of the state government. Thus no department, not even the legislative, has unlimited power under our system of government." * * *

"In Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648, decided in 1798, the Supreme Court of the United States, speaking through Mr. Justice CHASE, said 'There are acts which the Federal, or State Legislature cannot do, without exceeding their authority. There are certain vital principles in our free Republican Governments, which will detemine and overrule an apparent and flagrant abuse of legislative power; as to authorize manifest injustice by positive law; or to take away that security for personal liberty, or private property, for the protection whereof the government was established. An Act of the Legislature (for I cannot call it a law), contrary to the great first principles of the Social Compact, cannot be considered a rightful exercise of legislative authority."

See also Wharton's Criminal Law, 12th edition, volume 1, page 17; *Ex parte* Francis, 76 Fla. 304, 79 So. 753; Good v Nelson, 73 Fla. 29, 74 So. 17; Bailey v. State of Alabama, 219 U. S. 219, 31 S. C. 145, 55 L. Ed. 191; *Ex parte* Messer, 87 Fla. 92, 99 So. 330.

It will be observed that this statute does not attach any intent to defraud to the act which it makes a criminal offense. Under the statute as drawn, a tenant might be convicted and sent to jail although he held over beyond the expiration of his term by reason of illness of himself or family, or by reason of an honest mistake or misunderstanding as to the date when his tenantcy expired.

It seems that the Legislature has not enacted any statute by which the landlord shall be subject to a jail sentence if he wrongfully deprives the tenant of possession, or puts him out, before the expiration of the term. Why should landlords be given the free services of the county solicitor, or other public officers who are paid by the public, to enforce their civil rights against tenants? Is it not one of the effects of this statute to save landlords from the expense of attorney's fees and court costs in evicting their tenants? Can the Legislature extend this privilege of free legal services to landlords without extending a like privilege to tenants in resisting unlawful evictions? Would not this be a denial of "the equal protection of the laws" guaranteed by the Constitution?

For these reasons I think that the judgment of the lower court in holding the act unconstitutional and discharging the defendant in error should be affirmed.

## ON PETITION FOR REHEARING.

PER CURIAM.—The petition for rehearing assumes an unfavorable construction of Chapter 16066, Acts 1933, that has not been adopted by this Court. The statute uses the phrase "whose *lease* has expired," etc. It therefore has no application to verbal agreements of tenancy, so the effect of Chapter 15057, Acts 1931, in relation to Chapter 16066, Acts 1933, cannot be that set up in the tenth ground of the petition for a rehearing.

The word "lease," employed in Chapter 16066, Acts 1933, is used in its technical sense. As so used, the word "lease" means a "conveyance by way of demise, always for a less term than the party conveying has in the premises." Taylor Landlord & Tenant, Section 16; Craig v. Summers, 47 Minn. 189, 49 N. W. Rep. 742, 15 L. R. A. 236; 2 Bouvier's Law Dictionary 1887.

So the effect of the statute is necessarily confined by the proper definition of the word "lease" as used in the statute to the punishment of those persons who having entered into occupancy of premises under a written contract described in the law as a "lease," thereafter refuse to vacate the rented premises when the writing in the form the "lease" they hold plainly informs them that they are no longer entitled to remain in occupancy in defiance of the landlord's ten days' written notice to vacate. So construed it is not apparent wherein the statute violates either Sections 1, 2, 12, 16 and 24, of Florida's Bill of Rights, or conflicts with Articles 9 and 10 or the 13th or 14th Amendments to the United States Constitution, as claimed. Therefore the petition for a rehearing is denied.

Rehearing denied.

ELLIS, P. J., and TERRELL, and BUFORD, J. J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.

BROWN, J., dissents.