THORNBERRY, Circuit Judge:
This case enmeshes the court and the parties in the labyrinth of bankruptcy — specifically Chapter XII Real Property Arrangements. The cast of characters has grown with each repeated, although vain, attempt to breathe life into the debtor’s failing financial condition. In 1973, Barbara Garfinkle acquired title to the fee interest of the Eden Roc Hotel from Samuel Cohen. At the same time she acquired the lessee’s interest in the property by an assignment of the interest of Morris Lans-burgh, who held a 999-year lease on the hotel. When Barbara acquired the fee and the leasehold, the property was already subject to a first mortgage in favor of Aetna Life Insurance Company. Barbara executed a mortgage encumbering the fee in favor of Cohen and another encumbering the leasehold interest in favor of Lans-burgh. The parties agreed in both the fee conveyance and the leasehold assignment that there would be no merger of title until the Cohen mortgage on the fee was satisfied and a proper merger instrument filed. In 1974, Barbara executed a land trust arrangement with the Miami Beach National Bank. Thereafter the bank held legal title to the hotel and Barbara was the sole beneficiary of the trust.
At post time the parties were lined up Aetna, Cohen and Lansburgh, and the Miami Beach National Bank. Then Barbara initiated Chapter XII Bankruptcy proceedings in New York. Those proceedings were transferred to the Southern District of Florida, which also had pending suits by the United States Government seeking to foreclose on its interest in the Eden Roc and by one Curtis Katz, who asserted that he, too, had an interest in the property.[1] In May of *903 1975, Morris Lansburgh, with authorization from the New York Bankruptcy Judge, filed suit to foreclose his mortgage on the leasehold interest. That suit was also removed to Florida.
In July of 1975, the Trustee sought to reject or terminate the remaining portions of the 999-year lease. Lansburgh, of course, objected since the destruction of the lease would render his mortgage useless. The Trustee filed a complaint to determine the validity of the Lansburgh mortgage. The bankruptcy judge, faced with the unusual situation of a split-personality trustee, acting for Barbara Garfinkle as lessor and Barbara Garfinkle as lessee, held that the Trustee could not reject the lease. On appeal the Trustee contests that ruling.
The Trustee’s right to deal with unexpired leases stems from Section 70(b) of the Bankruptcy Act, which states:
(b) Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property: Provided, however, That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected. A trustee shall file, within sixty days after adjudication, a statement under oath showing which, if any, of the contracts of the bankrupt are exec-utory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee: Provided, however, That the court may for cause shown extend or reduce such period of time. Unless a lease of real property shall expressly otherwise provide, a rejection of such lease or of any covenant therein by the trustee of the lessor shall not deprive the lessee of his estate. A general covenant or condition in a lease that it shall not be assigned shall not be construed to prevent the trustee from assuming the same at his election and subsequently assigning the same; but an express covenant that an assignment by operation of law or the bankruptcy of a specified party thereto or of either party shall terminate the lease or give the other party an election to terminate the same shall be enforceable. A trustee who elects to assume a contract or lease of the bankrupt and who subsequently, with the approval of the court and upon such terms and conditions as the court may fix after hearing upon notice to the other party to the contract or lease, assigns such contract or lease to a third person, shall not be liable for breaches occurring after such assignment.
11 U.S.C. § 110(b). The Trustee sought to terminate the lease on behalf of Barbara Garfinkle as lessor because a default clause in the lease instrument stated that if the lessee were adjudged insolvent by any court or adjudicated a bankrupt, the lessor might terminate the lease. The Trustee also sought to reject the lease, acting for Barbara Garfinkle, lessee.
The bankruptcy judge held that the rejection of the lease by the Trustee, acting for Barbara as lessee, did not terminate the lease but merely removed it from bankruptcy administration, that the Trustee, acting for Barbara as lessor, could not exercise the default clause because that action would effect a merger of the leasehold and freehold (which Barbara had contracted not to do) and that, because the lessor and lessee were one person, termination or rejection by the Trustee was inequitable. We reverse the bankruptcy judge’s actions and remand the case to him for the following reasons.
The issue in this case is the survival of the leasehold “estate.” If that estate were destroyed, the Lansburgh mortgage would be worthless and a ranking creditor successfully toppled by the Trustee. Although the bankruptcy rules permit rejection of an unexpired lease on real property whether the bankrupt is the lessor or lessee of the premises, Fletcher v. Surprise, 180 F.2d 669 (7 Cir.), cert. denied, 340 U.S. 824, 71 S.Ct. 58, 95 L.Ed. 605 (1950), different principles govern lessor and lessee.
*904 Questions of the effect of a trustee’s rejection of an unexpired lease for a bankrupt lessee have generally arisen in conjunction with disputes over rent[2] or a lessee’s right to remove assets from the property.[3] Authorities agreed that for those purposes bankruptcy, and the rejection by the trustee of a bankrupt lessee, does not in and of itself terminate the lease. 4A Collier on Bankruptcy 1 70.44 (14th ed. 1975). We think that the same-rule applies to the issue in the present case. In Brown v. O’Keefe, 300 U.S. 598, 57 S.Ct. 543, 81 L.Ed. 827 (1937), the Supreme Court held that title to a bankrupt’s assets rests with the bankrupt when the assets are rejected as burdensome by the trustee. Brown was a suit for enforcement of personal liability imposed by a statute upon shareholders in a national bank. The petitioner claimed that he had no liability because prior to the assessment of the shareholders he had been adjudicated bankrupt and had received a discharge. During his bankruptcy, the trustee had, however, disclaimed any interest in the bank shares in question. The Court, in an opinion by Mr. Justice Cardozo, dismissed summarily the petitioner’s contention that at the moment of bankruptcy he lost title to the shares. Although the Court did not determine whether the title remained in the bankrupt until some decision was made by the trustee or whether it passed to the trustee only to revert back to the bankrupt on his rejection, it clearly held that the title came to rest in the bankrupt and was not extinguished. See also In re Gravure Paper & Board Corporation, 234 F.2d 928 (3 Cir. 1953); Rosenblum v. Ding-felder, 111 F.2d 406 (2 Cir. 1940).[4] We agree that the Trustee’s rejection of the lease for Barbara Garfinkle, lessee, did not destroy the leasehold estate. That action merely placed the leasehold outside of the bankruptcy administration without destroying the underlying estate and, therefore, the mortgage of Morris Lansburgh.
We now turn to the attempted termination of the lease by the Trustee, acting for Barbara Garfinkle, lessor. In the case of a lessor, the act itself states that unless the lease expressly provides otherwise, a rejection of the lease does not deprive the lessee of his estate. 11 U.S.C. § 110(b). The present lease contained a default clause stating that the bankruptcy of the lessee gave the lessor the right to terminate the lease. It did not contain express language that the trustee’s rejection for a bankrupt lessor would terminate the lessee’s estate. Thus the lease did not comply with the statutory requirements for automatic termination of the lessee’s estate.
The Trustee also attempted to terminate the lease by the exercise of the default clause. Section 70 b states that if such a clause is sufficiently “express” it is enforceable. A clause is sufficiently express if it conditions default upon the bankruptcy of the lessee. In re Tidus, 4 F.2d 558 (D.Del.1925). The issue of whether such a clause is enforceable is separate and distinct, however, from the issue of whether its enforcement in a particular case would be inconsistent with other provisions of the *905 Bankruptcy Act, Smith v. Hoboken Railroad, Warehouse and Steamship Connection Co., 328 U.S. 123, 66 S.Ct. 947, 90 L.Ed. 1123 (1945); In the Matter of Fleetwood Motel Corp., 335 F.2d 863 (3 Cir. 1964), or is inequitable in the particular circumstances before the court. Queens Boulevard Wine & Liquor Corp. v. Blum, 503 F.2d 202 (2 Cir. 1974).
We first note that the terms assumption, rejection and termination cause some difficulty in this area. Properly used, the terms assumption and rejection refer to the bankruptcy trustee’s decision to administer or to refuse to administer assets of the bankrupt.[5] The Trustee for Barbara Garfinkle, lessor, wishes to accept the lease and, having done so, to terminate it by exercising the default clause contained therein.
Our task is to determine whether some equitable or legal principle prevents him from doing so. The appellee-mortgagee argued that under the peculiar circumstances of this case the Trustee for the lessor could not equitably exercise the default clause; he also argued that the Trustee for the lessor was bound by the lessor’s covenant against merger, a part of the original conveyance to the lessor. The bankruptcy judge agreed with both theories. He first held that it was “totally inequitable” to permit the Trustee to take advantage of the default clause when the chain of events leading up to bankruptcy and the opportunity for the clause’s exercise was commenced by the lessor herself. He then held that the Trustee was bound by the covenant against merger.
The bankruptcy judge’s equity holding is a “Chang and Eng” theory. What one half of Barbara Garfinkle did, reasoned the bankruptcy judge, so did the other.[6] Thus it was unfair to permit a lessor to initiate Chapter XII proceedings giving rise to default claims against herself.[7] While we have some sympathy with that position, we think that the summary judgment posture of the case demands reversal and remand. Every student of equity knows that “one who seeks equity must do equity”. Lans-burgh’s equitable argument is that he has been injured by the peculiar circumstance of having a lessor and a lessee who are the same person. The contrary argument .is that Lansburgh should not receive more than he normally would simply because the lessor and lessee are the same person.[8]
The Trustee suggested in his brief that Lansburgh could have protected himself against the eventuality of bankruptcy by including a “pick-up lease” clause in the lease agreement. Under such a clause the lessor is obligated to give the leasehold mortgagee a new lease naming the leasehold mortgagee as the new tenant in the event of default by the original tenant. 1 Friedman on Leases H 7.801. The appellees suggest that a modification of the lease agreement furnished an analogous clause, giving them the right to notification and the opportunity to cure any default.
*906 The bankruptcy court’s opinion fails to address the possibility that the equities of the survival of the Lansburgh mortgage may depend upon the lease modification and the mortgagee’s ability and willingness to exercise the rights under it. The justification for survival of the leasehold mortgage under the “pick-up lease” arrangement is that the lessor or the estate for the benefit of his creditors continue to receive revenue as they did before. In a bankruptcy context the justification for the continued existence of the leasehold mortgage is stronger if the mortgagee is willing to “put something in the pot” for the rest of the creditors. Resolution of the issue involves factual determinations not possible in the summary judgment mode of the case. We therefore reverse the judgment of the bankruptcy court and remand the case for the consideration of the issues outlined above.
REVERSE AND REMAND.

. In a companion case, Katz has asserted that he owns fifty percent of the Eden Roc. He bases his claim on certain loans made to Barbara Garfinkle’s husband during 1974 and 1975. Katz v. Weil, 5 Cir., 577 F.2d 906. The interest of the United States appears, although the record does not specifically so state, to arise from a tax lien. We assume this because the record’s index indicates that a United States attorney appeared on behalf of the I.R.S.

. When a lease is rejected, the estate of the bankrupt lessee is liable only for the reasonable value of the use and occupancy of the premises which may or may not be the same as the rent fixed by the lease. This is sometimes termed administrative rent. 3 Collier Bankruptcy Manual (111.004(3.2] (3d ed. 1974).

. See generally Hill v. Larcon Co., 131 F.Supp. 469 (D.Ark. 1955); In re Newkirk Mining Co., 238 F.Supp. 1 (E.D.Pa.1964), aff'd, 3 Cir., 351 F.2d 954.

. In In re Freeman, 49 F.Supp. 163 (D.Ga.1943), a district court held that the “estate” which survived a lessor rejection under section 70 b was only that of a tenant at sufferance. Under Florida law, a tenant at sufferance has no “estate” and his naked possession will not support a mortgage. Coleman v. State ex rel. Carver, 119 Fla. 653, 161 So. 89 (1935). We reject Freeman’s interpretation of 70 b as contrary to the clear language of the statute. See In the Matter of New York Investors Mutual Group, Inc., 153 F.Supp. 772 (S.D.N.Y.1957), aff'd sub. nom., Cohen v. East Netherland Holding Co., 258 F.2d 14 (2 Cir. 1958). See also 1 Collier Bankruptcy Manual fl 70.28 (3d ed. 1974) (Section 70 b’s provision that unless the lease expressly provides otherwise, the lessee’s estate is not terminated intended as an equitable safeguard for an innocent party who has based his affairs on the term provided in the lease).

. Title to an unexpired lease does not pass to the trustee until his assumption of the lease. 4A Collier on Bankruptcy fl 70.44.

. Chang and Eng were the famous “Siamese twins”. Joined together at the chest, the twins had a common liver. Eng was a teetotaler; Chang something of a drinker. When Chang drank, Eng, through his common organ, was unavoidably involved in the process. See Kay Hunter, Duet for a Lifetime (Coward-McCann, Inc. 1964), p. 104-105.

. A somewhat analagous solution is found in a case in which a lessor who agrees to a reorganization under the bankruptcy laws is held to have waived the exercise of a default clause. Entin v. Stevens, 323 F.2d 894 (8 Cir. 1963).

. A bankrupt lessor’s trustee would not ordinarily disturb the solvent lessee. If, however, the lessee were also insolvent the trustee might terminate the lease and the mortgagee, if any, would be the loser. Lansburgh seems to argue that the motivation of a trustee for a separate lessor is somehow more pure since in terminating the leasehold estate he does not wipe out a debt of the lessor or benefit the creditors he represents. Motivation aside a mortgagee of a leasehold loses his lien or title with the termination of the leasehold estate unless he is otherwise protected. We need not reach the issue of whether the merger clause, standing alone, provided such protection in view of our resolution below.