DAVIDOW *v.* WADSWORTH MANFG. CO.

1. STATUTES—CONSTRUCTION—PENALTY CANNOT BE IMPLIED.
    A penalty for the violation of a statute must be expressly
    created and imposed by the statute and cannot be raised
    or extended by implication.

2. DAMAGES—LIQUIDATED DAMAGES—PENALTY—DISTINCTION.
    A penalty, in contradistinction to liquidated damages, is a
    sum inserted in a contract, not as a measure of compen-
    sation for its breach, but rather as a punishment for de-
    fault, or by way of security for actual damages which
    may be sustained by reason of nonperformance, and in-
    volves the idea of punishment.

3. SAME—DAMAGES IN EXCESS OF LAWFUL INTEREST USURY.
    Where liquidated damages are claimed for the nonpayment
    of a sum of money, and such damages exceed the lawful
    rate of interest, they are necessarily in violation of the
    law of usury, and will not be allowed.

4. STATUTES — CONSTRUCTION — TECHNICAL CONSTRUCTION TO BE
    AVOIDED.
    Statutes, as well as constitutions, being made for the gov-
    ernment and guidance of the "plain, common people,"
    should not be subjected to such technical construction as
    to do away with their plain provisions.

5. CONSTITUTIONAL LAW—STATUTES—CLASS LEGISLATION—MASTER
    AND SERVANT.
    Act No. 59, Pub. Acts 1913 (2 Comp. Laws 1915, §§ 5583-
    5586), regulating the time of payment of wages to em-
    ployees of certain classified employers, and providing a
    penalty for violation thereof, *held,* objectionable as class
    legislation in that the classification under the act is arbi-
    trary and oppressive and without any valid reason for
    its basis, also in that it seeks, under the guise of liqui-
    dated damages, to impose a penalty for the benefit of the
    employee, not provided for in the act, which is confisca-
    tory and unreasonable.

Case-made from Wayne; Jayne (Ira W.), J.  Sub-

mitted April 21, 1920.   (Docket No. 15.)   Decided July 20, 1920.

Assumpsit in justice's court by Lazarus D. Davidow against the Wadsworth Manufacturing Company for wages due for labor performed, and for the penalty provided under section 5385, 2 Comp. Laws 1915. There was judgment for plaintiff and defendant appealed to the circuit court.   Judgment for plaintiff. Defendant appeals.   Reversed, and judgment entered.

*Blain & Martz,* for appellant.

*Joseph B. Beckenstein,* for appellee.

STONE, J.   This case originated in justice's court in the city of Detroit.   Action was brought for wages due from defendant.   The plea was the general issue. Defendant appealed from a judgment against it to the circuit court.   The defendant, a Michigan corporation, is a manufacturing corporation engaged in the business of manufacturing Ford sedan automobile bodies.   Plaintiff had worked as a stenographer in the employ of the defendant from April 20, 1917, to August 11, 1917, at which time he was discharged. There was due to him at that time wages for four days, amounting to $12.32.   No proper tender of this amount was ever made to the plaintiff by the defendant, and no check for the amount due was sent to him as contemplated by sections 5583-5586, 2 Comp. Laws 1915.   There was a jury trial.   At the close of plaintiff's testimony the defendant moved the court to direct a verdict for the plaintiff for $12.32 and interest at 5 per cent. per annum from August 13, 1917, on the ground that the statute above referred to was unconstitutional and therefore that plaintiff was not entitled to 10 per cent. per day provided for in said statute; and that the measure of plaintiff's damages

was interest at 5 per cent. per annum. The motion was denied by the court, it holding that the statute was constitutional.

At the close of the case, the plaintiff moved the court to direct a verdict for the plaintiff for the sum of $500, comprising the amount due the plaintiff for wages at the time of his discharge, and 10 per cent. per day thereon, as provided by the said statute. As the wages due and the claimed 10 per cent. per day penalty thereon which had accrued under the statute, exceeded the limit of the jurisdiction of the Detroit justice's court of $500, plaintiff asked for a verdict in that sum. The court, holding that said statute was constitutional, and that plaintiff was entitled to the penalty therein provided, granted the motion and directed the jury to find for the plaintiff in the sum of $500, and verdict and judgment were entered for that sum.

The evidence showed that if the above statute is constitutional, plaintiff is entitled to a judgment of $500 damages; if unconstitutional, he is entitled to a judgment of $12.32 and interest at 5 per cent. per annum. The case has been brought here by defendant by case-made after judgment.

The third assignment of error is to the effect that the court erred in holding that said statute was constitutional, for the reason that said statute violates the 14th amendment to the Constitution of the United States because the same constitutes "class legislation," and for the reason that the same violates section 16, article 2, of the Constitution of this State, which provides that no person shall be deprived of property without due process of law. The statute here involved is Act No. 59, Public Acts of 1913, entitled:

"An act regulating the time of payment of wages to employees of all manufacturing, mercantile, street railway, telegraph, telephone, railroad, express, min-

ing, electric light, gas and water companies or corporations, doing business in this State, and employees of every contractor, person or copartnership in this State engaged in any manufacturing business, in any of the building trades, in operating quarries, in and upon public works, in the construction or repair of railroads, street railways, roads, bridges or sewers; and providing a *penalty* for a violation thereof."

The third section of the act follows:

"SEC. 3. Any employer mentioned in section one of this act, who, unless prevented by act of God, proceedings in bankruptcy or orders or process of any court of competent jurisdiction, or circumstances over which such employer has no control, shall fail to make payment of the wages due to any such employee, as provided in section one of this act, shall, as *liquidated damages* for such failure, pay to such employee for each day that the amount due him remains unpaid, ten per cent. of the amount due him in addition thereto, and said damages may be recovered in any court having jurisdiction of the suit to recover the amount due to such employee."

It will be observed that by the title of the act the purpose of the legislation is to regulate the time of payment of wages to employees of manufacturing, mercantile, etc., companies or corporations. The title contains no hint even that failure to comply with the terms of the statute will render the employer liable to pay more than the amount of wages due the employee by way of liquidated damages. The subject of liquidated damages is not mentioned in the title. It is stated in the title that the act provides a penalty for a violation thereof. But there is a marked difference between a penalty and liquidated damages. Section 21 of article 5 of the Constitution of this State provides that: "No law shall embrace more than one object, which shall be expressed in its title." Should the subject of liquidated damages have been named or expressed in the title? While it was not designed to require the body of the act to be a mere repetition

of the title, yet it might well be urged that so vital a matter as the addition of 10 per cent. of the amount due for each day that the amount remains unpaid should have been indicated in the title. But as that subject has not been briefed or discussed by counsel, we pass it without decision.

But the question whether the burden imposed by this statute upon the defaulting employer is in any sense liquidated damages may well be considered. Were we dealing with a contract between private parties where similar language was used, we would not hesitate to hold that the sum here imposed was a penalty and not liquidated damages. *Jacquith* v. *Hudson,* 5 Mich. 123; *Daily* v. *Litchfield,* 10 Mich. 29; *Davis* v. *Freeman,* 10 Mich. 188; *Calbeck* v. *Ford,* 140 Mich. 48; *Decker* v. *Pierce,* 191 Mich. 64, 70; 8 R. C. L. title "Damages," § 110 *et seq.,* pp. 116-120.

In *Jacquith* v. *Hudson, supra,* this court, speaking through Justice CHRISTIANCY, said:

"The real question in this class of cases will be found to be, not what the parties intended, but whether the sum is, in fact, in the nature of a penalty; and this is to be determined by the magnitude of the sum, in connection with the subject-matter, and not at all by the words or the understanding of the parties."

If it appear, by reference to the subject-matter, that the parties have made the stipulation without reference to the principle of just compensation, and so excessive as to be out of all proportion to the actual damages, it should be held that they could not have intended it as stipulated damages, though they have so expressly declared. Here there is no penalty provided for in the act. A penalty must be expressly created and imposed by statute, and cannot be raised or extended by implication. 13 Am. & Eng. Enc. Law (2d Ed.), p. 55 and cases cited. A penalty, in contradistinction to liquidated damages, is a sum inserted in a contract, not as the measure of compensation for its

breach, but rather as a punishment for default, or by
way of security for actual damages which may be sus-
tained by reason of nonperformance, and involves the
idea of punishment. It has been held that where liqui-
dated damages are claimed for the nonpayment of a
sum of money, and such damages exceed the lawful
rate of interest, they are necessarily in violation of
the law of usury, and will not be allowed. See 13
Cyc. p. 101, note 56. Here by the terms of this anom-
alous statute there is no attempt to impose a penalty,
but the term "liquidated damages for such failure,"
is used.

It is urged by appellant that the statute here in-
volved makes arbitrary classifications which are not
based on any public necessity, and do not serve any
public purpose for the common good; fails to include
into classes persons of like kind, subject to common
risks and having like peculiarities; imposes heavy
burdens on one portion of a natural class, from which
the other is immune; grants a privilege to a portion
of a natural class which it denies to the other, and
makes unreasonable sub-classification both in the class
the act seeks to benefit and in the class upon which
the burden is imposed. That it results in an arbitrary
differentiation between different kinds of employees,
and also employers engaged in like work. That those
affected by this act, as the class on which is imposed
a burden, are manufacturing and mercantile organi-
zations, and a few specially named industries, enter-
prises and utilities, and the class granted a special
privilege comprises the employees of those industries.
It is urged that for the purpose of construing the act
the ordinary definitions of such words as "manufac-
ture" and "mercantile" must control as to the legis-
lative intent; that those included in a class by the
act on whom to impose its burdens are as follows:
Manufacturing, mercantile, street railway, telegraph,

telephone, railroad, express, mining, electric light, gas and water companies or corporations, and, in addition, those engaged in building trades, operating quarries, public works, construction or repair of railroads, street railways, roads, bridges and sewers. That in the light of the above definitions a great list of business enterprises and operations to which the act does not apply, may be named the following: Banks, trust companies, surety companies, insurance companies, the professions, steamship companies, engineering organizations, taxicab companies, printers, hotels, barbers, laundries, storage companies, publishers, garages, theatres, newspapers, elevators and trucking companies. The question is asked, On what reasonable basis of public necessity or of risks, hardships or peculiarities inherent in the business, can those enumerated in the act be differentiated for the purpose of the act, as a class of unlike kind from those not enumerated, and which have been named? Wherein, it is asked, is a railroad or a gas company so unlike a steamship company or a bank, that a public need exists which makes reasonable and justifiable a law which provides that on failure after discharge to pay on demand the wages of a janitor who sweeps the floor of a railroad station, or a gas company's office, the measure of liquidated damages of 10 per cent. per day, or 3,650 per cent. per annum, and allows a janitor who sweeps the floor of a steamship waiting-room or of a bank to collect in a like case only 5 per centum? The following Michigan cases are cited by appellant: *Haynes* v. *Lapeer Circuit Judge,* 201 Mich. 138, 141 (L. R. A. 1918D, 233) ; *O'Connell* v. *Lumber Co.,* 113 Mich. 124; *Wilder* v. *Railway Co.,* 70 Mich. 382; *Schut* v. *Railway Co.,* 70 Mich. 433; *Grand Rapids Chair Co.* v. *Runnels,* 77 Mich. 104, and many cases from other jurisdictions.

In *Black* v. *State,* 113 Wis. 205 (89 N. W. 522),

Winslow, J., speaking for the court upon the subject of classification, at page 527, said:

"Passing then to the question of classification, we reach really the crucial point of the case.  We have endeavored to give this subject the most careful thought and investigation, but we have been unable to convince ourselves that the attempted classification in this law answers the requirements of legal and constitutional classification.   It is a trite expression that classification, in order to be legal, must be rational; it must be founded upon real differences of situation or condition, which bear a just and proper relation to the attempted classification, and reasonably justify a difference of rule.  *  *  *  If persons under the same circumstances and conditions are treated differently, there is arbitrary discrimination, and not classification."

In *Johnson* v. *Railroad Co.*, 43 Minn. 222 (45 N. W. 156, 8 L. R. A. 419), Mitchell, J., used the following language:

"It has been sometimes loosely stated that special legislation is not class 'if all persons brought under its influence are treated alike under the same conditions.'  But this is only half the truth.  Not only must it treat alike, under the same conditions, all who are brought 'within its influence,' but in its classification it must bring within its influence all who are under the same conditions.   Therefore, if a distinction is to be made between railway corporations and other employers as respects their liability to their employees, it must be based upon some difference in the nature of the employment, and can only extend to cases where such difference exists."

We have examined, but shall not discuss at length, the authorities in other jurisdictions, as we think our own decisions control the question.

On behalf of the plaintiff it is urged that the construction given to the words "manufacturing" and "mercantile" by defendant's counsel is too narrow, and that those words were intended by the legislature to

211—Mich.—7.

cover all corporations engaged in a commercial capacity, eliminating only those engaged in religious, educational, charitable, fraternal, and other pursuits in which the prime purpose is not the procuring of pecuniary profit. But we should bear in mind that statutes, as well as constitutions, are made for the government and guidance of the "plain, common people," and they should not be subjected to such technical construction as to do away with their plain provisions.

The statutes of the different States are discussed by counsel for the plaintiff, together with the decisions of the courts of the different States in construing such statutes. At the argument of this case we gathered from the position taken by plaintiff's counsel that statutes similar to ours existed in many other States, which were named by them. We have examined the statutes, and find no instance where our statute, in substance even, exists in other States. We here refer to the statutes of the following States to which our attention has been called by counsel for the plaintiff, and we reiterate that our statute is an anomalous one. It will be observed that most of the statutes referred to contain penalties and forfeitures for violations of the statutes involved, as note the following:

Kentucky. Wage-earners — Penalty for not paying in money. Provides that any corporation, or person or persons having the ownership or control of any factory, mine or workshop in this commonwealth who shall violate the provisions of section 244 of the constitution reading as follows: "All wage earners in this State employed in factories, mines, workshops, or by corporations shall be paid for their labor in lawful money," shall be guilty of a misdemeanor, and on trial and conviction had in any court of competent jurisdiction shall be fined not exceeding $500 for each violation thereof.

Arkansas. An act to provide for the protection of servants and employees of railroads. The act provides that whenever any railroad company, or any person or corporation engaged in the business of operating or constructing any railroad or railroad bridge shall discharge, with or without cause, or refuse to further employ any servant thereof, the unpaid wages of any such servant or employee earned at the contract rate without any abatement or reduction shall be and become due and payable on the day of such discharge or refusal to longer employ. And if the same be not paid on such day, then, as a penalty for such nonpayment, the wages of such servant or employee shall continue at the same rate until paid, provided such wages shall not continue more than sixty days unless an action therefor shall be commenced within that time.

Maryland. The law of Maryland provides that every association or corporation doing business in that State employing wage workers, whether skilled or ordinary laborers, engaged in manual or clerical work in the business of mining, manufacturing, operating a steam or electric railroad, street railway, telegraph, telephone or express company, shall make payment in lawful money of the United States semi-monthly to said employees, laborers and wage workers at their respective places of employment at intervals of not more than 16 days. If in any case any such association or corporation shall refuse to make payment at the time above set forth to their wage workers, laborers or other employees the wages due them, or any of them, said association, corporation or officer so refusing shall be guilty of a misdemeanor and be liable to indictment therefor, and upon conviction shall be fined a sum not exceeding $200 for each offense.

New York. The New York statute makes provision for the cash payment of wages, and prohibits the

payment of employees in scrip, commonly known as "store money orders." Provides that any person, firm or corporation violating its provisions shall be guilty of a misdemeanor; and provides that it shall forfeit to the people of the State the sum of $50 for each such failure, to be recovered by the commissioner of labor in his name of office in a civil action.

Vermont. Corporations, manufacturing and mercantile, shall pay each week in lawful money such employee engaged in the business to a day not more than six days prior to the date of such payment. Provided, that if at any time of payment an employee is absent from his regular place of labor he shall be entitled to such payment upon demand. Payment, in scrip, etc., is prohibited. No such corporation shall pay its employes in scrip, vouchers, due bills or store orders except it be a co-operative corporation in which such employee is a stockholder. Penalty. Such corporation that fails to pay wages of an employee, as provided by the second and third sections of the statute, shall forfeit to the State $50 for each such failure, to be recovered in an action on the statute by the State attorney of the county in which such violation occurs, and in his name of office; but an action shall not be maintained therefor until the State's attorney has given the employer 10 days' notice in writing that such action will be brought for the wages not paid, as provided in such sections.

Washington. An act to provide for the payment of wages and labor in lawful money of the United States, and to punish violations of the same. When any laborer performing work shall cease, whether by discharge or by voluntary withdrawal, the wages due shall be paid forthwith, either by cash or by order redeemable in cash at its face value on presentment at bank. It otherwise provides that any firm, person or corporation, on failure to comply, shall be guilty of

a misdemeanor, and on conviction thereof shall be fined in any sum not exceeding $300. And provides, in case the employee is obliged to sue for a recovery, for an attorney fee of not less than $10 nor more than $25 to be taxed.

We shall not here discuss the numerous decisions cited by counsel for the plaintiff, for the reason that they refer to statutes so different from ours that their applicability may well be doubted. We have examined the cases, and it may be said that there is an irreconcilable conflict in the decisions in different jurisdictions as to the validity of legislation fixing the time for payment of wages of those who work for corporations. In some jurisdictions such a statute is held to be valid as being a proper exercise of the reserved power of the State to amend corporate charters, or of the police power of the State, and is regarded as not depriving the corporations affected thereby of either property or liberty of contract without due process of law, and as not denying to them the equal protection of the laws. In other jurisdictions, however, statutes regulating the time of payment of wages are held to be invalid. We call attention to the case of *Cleveland, etc., R. Co.* v. *Schuler* (decided in 1914), 182 Ind. 57 (105 N. E. 567, L. R. A. 1915A, 884), the headnote of which reads as follows:

"While railroads may be placed in a class by themselves for some legislative purposes, such classification, to be valid, must be for purposes that have to do with duties peculiar to them as carriers, or with dangers peculiar to their operation."

It was there held that a statute requiring railroad companies to pay any employee in full within 72 hours after he had been discharged, or had voluntarily quit the service, and providing certain penalties, was unjustly discriminatory and in violation of the State constitution, since the classification made was arbitrary

and without any valid reason for its basis. The court there said:

"It is true, as appellant concedes, that railroads may be placed in a class by themselves for some legislative purposes, but only for such purposes as have to do with duties peculiar to them as carriers or with dangers peculiar to their operation. The rule is thus stated in *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 674 (80 N. E. 529, 14 L. R. A. [N. S.] 418):

" 'The legislature may make a classification for legislative purposes, but it must have some reasonable basis upon which to stand. It is evident that differences which would serve for a classification for some purposes would furnish no reason for a classification for legislative purposes. Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for, and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial, and not artificial. Not only must the classification treat all brought under its influence alike, under the same conditions, but it must embrace all within the class to which it is naturally related. Neither mere isolation nor arbitrary selections is a proper classification.' "

We call special attention to the further reasoning of the court in this case.

We are of the opinion that the statute under consideration constitutes class legislation of the most objectionable kind. The classification is arbitrary and oppressive and without any valid reason for its basis. It seeks, under the guise of liquidated damages, to impose a penalty for the benefit of the employee, not provided for in the act, which is confiscatory and unreasonable.

The judgment of the court below will be reversed; and, as the case is here upon case-made, judgment may be entered in this court for the plaintiff for the sum of $12.32 with interest thereon from August 13, 1917, with costs to appellant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.