JONES v RACING COMMISSIONER

(JONES v SHIRLEY)

OPINION OF THE COURT

1. TAXATION—STATUTES—EXPENDITURE OF STATE FUNDS—CONSTITU-
   TIONAL LAW—PARTIES—STANDING—COURT RULES.

   At least five residents of the state who own property assessed for
   direct taxation are required by court rule in order to bring an
   action to test the constitutionality of an act involving the
   expenditure of state funds (MCLA 431.43; GCR 1963, 201.2[3]).

2. TAXATION—STATUTES—EXPENDITURE OF STATE FUNDS—CONSTITU-
   TIONAL LAW—PARTIES—STANDING.

   A prerequisite to a taxpayer's right to maintain a suit to test the
   constitutionality of an act involving the expenditure of state
   funds against a unit of government is the threat that he will
   sustain substantial injury or suffer loss or damage as a tax-
   payer, through increased taxation and the consequences thereof
   (MCLA 431.43).

DISSENT BY V. J. BRENNAN, J.

3. TAXATION—STATUTES—COURT RULES—EXPENDITURE OF STATE
   FUNDS—CONSTITUTIONAL LAW—PARTIES—STANDING.

   *The statute or corresponding court rule which provides that "an
   action to prevent the illegal expenditure of state funds or to
   test the constitutionality of a statute relating thereto may be
   brought in the name of a domestic non-profit corporation
   organized for civic, protective or improvement purposes, or in
   the names of at least 5 residents of this state who own property
   assessed for direct taxation by the county wherein they reside"
   is not the sole basis upon which taxpayers of Michigan may
   maintain the action; a taxpayer may also institute such an
   action if he demonstrates that he will sustain substantial
   injury or suffer loss or damage as a taxpayer, through in-*

REFERENCE FOR POINTS IN HEADNOTES

[1–5] 71 Am Jur 2d, State and Local Taxation § 42 *et seq.*

*creased taxation and the consequences thereof (MCLA 600.2041[3]; GCR 1963, 201.2[3]).*

4. Taxation—Expenditure of State Funds—Constitutional Law—Parties—Standing—Statutes—Court Rules.

*There is no requirement imposed that taxpayers demonstrate substantial injury if five or more residents of Michigan who own property assessed for direct taxation bring a taxpayer action to challenge allegedly illegal expenditures of state funds or the constitutionality of statutes providing for such expenditures (MCLA 600.2041[3]; GCR 1963, 201.2[3]).*

5. Taxation—Statutes—Expenditure of State Funds—Parties—Standing—Constitutional Law.

*A bettor at a licensed Michigan horse race track, who on his own behalf and on behalf of all bettors in Michigan similarly situated joined in an action to have an act involving the expenditure of state funds declared unconstitutional because the act increased the percentage retained by race track licensees as their commission from monies wagered at the track and increased the percentage of monies which the licensee is required to pay the State Treasurer from his commission, met the requirement needed for legal capacity to maintain the action because he suffered substantial injury as a result of the passage of the act where he did not receive as much money from his winning ticket on a horse as he would have before the act became effective (MCLA 431.43).*

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted Division 2 June 11, 1974, at Lansing. (Docket Nos. 18075, 18114.) Decided October 8, 1974. Leave to appeal denied, 393 Mich 772.

Complaint by Howard L. Jones, Henry Dodge, and James Del Rio against Leo C. Shirley, Racing Commissioner, for a declaratory judgment that 1972 PA 5 is unconstitutional. The City of Pontiac and the City of Pontiac Stadium Building Authority intervened as defendants. Summary judgment for plaintiffs. Defendants appeal. Plaintiffs cross-appeal. Reversed.

*Zolton Ferency,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Florence E. Fraser,* Assistants Attorney General, for the Racing Commissioner.

*Sherwin M. Birnkrant,* City Attorney, and *Virtue & Carpenter, P. A.,* for City of Pontiac and Pontiac Stadium Building Authority.

Before: QUINN, P. J., and V. J. BRENNAN and CARLAND,* JJ.

QUINN, P. J. This declaratory judgment action was filed by plaintiffs to have 1972 PA 5; MCLA 431.43; MSA 18.966(13)[1] declared unconstitutional. Defendant Shirley moved for accelerated judgment on the basis that plaintiffs lacked legal capacity to sue, GCR 1963, 116.1(3) and that no plaintiff has demonstrated that he is or will be injured in his capacity as a taxpayer. After denial of this motion, there were extensive proceedings before the trial court culminating in a judgment declaring 1972 PA 5 unconstitutional.

Of the two appeals by defendant and intervening defendants, we deal first with the appeal of defendant because we find it dispositive of the entire litigation. The first claim of error by defendant relates to the denial of his motion for accelerated judgment.

GCR 1963, 201.2(3) provides:

"[A]n action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] A practically identical act was passed by the same Legislature the same year, 1972 PA 329. Under *Detroit United Railway v Barnes Paper Co,* 172 Mich 586, 589; 138 NW 211, 212 (1912), PA 329 prevails.

relating thereto may be brought in the name of a domestic non-profit corporation organized for civic, protective, or improvement purposes, or in the names of at least 5 residents of this state who own property assessed for direct taxation by the county wherein they reside."

1972 PA 5 involves the expenditure of state funds and this action was brought to test the constitutionality of that act, and the foregoing rule requires five plaintiffs, not three.

In *Menendez v Detroit,* 337 Mich 476, 482; 60 NW2d 319, 323 (1953), a unanimous Supreme Court stated:

" * * * prerequisite to a taxpayer's right to maintain a suit of this character against a unit of government is the threat that he will sustain substantial injury or suffer loss or damage as a taxpayer, through increased taxation and the consequences thereof."

No plaintiff in this action demonstrates in the complaint that he will "sustain substantial injury or suffer loss or damage as a taxpayer".

For the foregoing reasons, defendant's motion for accelerated judgment should have been granted. While we recognize that there is a serious question of the constitutionality of 1972 PA 329 under Const 1963, art 4, § 24, we decline to pass upon it without the proper parties plaintiff.

Reversed but without costs, a public question being involved.

CARLAND, J., concurred.

V. J. BRENNAN, J. *(dissenting).* This appeal arises from plaintiffs' successful declaratory judgment action in the court below in which 1972 PA 5; MCLA 431.43; MSA 18.966(13) was declared uncon-

stitutional. My colleagues dispose of the case on the basis that the trial court should have granted defendant Shirley's motion for accelerated judgment under GCR 1963, 116.1(3) as to all plaintiffs because the plaintiffs herein did not have legal capacity to sue. I am unable to agree with this disposition of the case. I therefore dissent.

My colleagues find that the plaintiffs herein did not have legal capacity to sue for two reasons: (1) failure to bring the suit "in the names of at least 5 residents of this state who own property assessed for direct taxation by the county wherein they reside"; and (2) failure to demonstrate in the complaint that any of the plaintiffs will "sustain substantial injury or suffer loss or damage as a taxpayer * * * ". While it is clearly obvious that this action was not maintained in the name of five plaintiffs, that fact, standing alone, is not sufficient for the action taken by the majority herein. I do not understand MCLA 600.2041(3); MSA 27A.2041(3), or the corresponding court rule, GCR 1963, 201.2(3), to be the sole basis upon which taxpayers of this state may maintain suits to challenge allegedly illegal expenditures of state funds or the constitutionality of statutes providing for the expenditure of state funds. A taxpayer may also institute such an action if he demonstrates "that he will sustain substantial injury or suffer loss or damage as a taxpayer, through increased taxation and the consequences thereof". *Menendez v Detroit,* 337 Mich 476, 482; 60 NW2d 319, 323 (1953). The difference between the two methods of bringing taxpayer suits lies in the requirement that the plaintiff demonstrate that he will sustain substantial injury. If five or more residents of this state who own property assessed for direct taxation bring a taxpayer action, there is no require-

ment imposed, as I understand the law, that they demonstrate substantial injury. MCLA 600.2041(3); MSA 27A.2041(3) and the corresponding court rule eliminate this requirement for this class of plaintiffs.

The instant case was brought as a class action on behalf of three different classes by three named plaintiffs. For these plaintiffs, or any of them, to have had legal capacity to maintain this action it was necessary for them to demonstrate in the complaint that they would "sustain substantial injury or suffer loss or damage as a taxpayer, through increased taxation * * * ". My colleagues say that none of these plaintiffs have made such a demonstration. It is with this conclusion that I disagree.

1972 PA 5 increased the percentage retained by race track licensees as their commission from monies wagered at the track from 15% to 16-1/2% and increased the percentage of monies wagered a race track licensee is required to pay the State Treasurer from his commission. The act also specified that a certain amount of the revenues received from thoroughbred and harness racing was to be returned to certain counties to be used solely for the rental of a stadium and other facilities. It appears from the record that the only stadiums which would be benefitted by this grant were those planned, at that time, for Pontiac and Detroit. The act, therefore, insofar as it relates to this case, has the direct effect of increasing the percentage of monies taken by the state from betting pools at licensed race tracks in the state and using that money, money received from thoroughbred and harness racing, to assist in rental payments at the Pontiac Stadium. Viewed in this light, it is my considered opinion that it was demonstrated in the

complaint that plaintiff Howard L. Jones and the class of plaintiffs he represented "suffered substantial injury" as a result of the passage of this act.

Plaintiff Jones joined in this action on his own behalf as a bettor at licensed race tracks in the State of Michigan and on behalf of all bettors in the State of Michigan similarly situated. In the complaint it was alleged that plaintiff Jones purchased a winning ticket on a horse that raced at Northville Downs, a licensed race track; that on the night the winning ticket was purchased the licensee, pursuant to 1972 PA 5, retained from the monies wagered 11% for itself as licensee and paid, out of the money wagered in the betting pool, 5-1/2% to the state; and, lastly, that this action denied plaintiff Jones and other members of his class money to which they would otherwise have been entitled. The complaint alleged that the amounts retained by the licensee were retained under an unconstitutional statute, namely 1972 PA 5.

By these allegations plaintiff Jones demonstrated that he and the members of the class he represents were directly affected by the challenged legislation in a manner unlike that of the ordinary citizen whose taxes are not affected by the act. 1972 PA 5 has the effect of reducing the amount of monies contained in betting pools at licensed race tracks which, as plaintiff Jones alleges, ultimately affects, and did in fact affect, the winnings a successful bettor receives. Plaintiff Jones, by these allegations, has demonstrated that he, and the class he represents, have a sufficient "justiciable interest" in the subject matter of this suit to provide him with legal capacity to sue. In light of this I strongly believe that we should proceed to decide the issues raised on this appeal which, as

my colleagues candidly recognize, raise serious questions as to the constitutionality of this act. Aside from the obvious difficulty of reconciling this act with Const 1963, art 4, § 24, I also find this act to suffer from serious constitutional problems insofar as it seeks to appropriate state funds for the benefit of a private concern. Const 1963, art 4, § 30 requires the "assent of two-thirds of the members elected to and serving in each house of the legislature" before public money can be appropriated for a private purpose. This was not done in the instant case. I would hold, therefore, that this act is unconstitutional. I can see no sound reason why the tax dollars of the State of Michigan should go to support this private lucrative venture, whatever their source. The profits that the primary recipient of this legislative gift will secure from the use of the stadium certainly will not be put to any public use. I therefore dissent.