HERTEL v RACING COMMISSIONER

1. CONSTITUTIONAL LAW—STANDING TO SUE—STATE RACING LAW—
   EXPENDITURE OF STATE FUNDS—COURT RULES.

   Plaintiffs have standing both at common law and under a court
   rule to challenge the constitutionality of the expenditure of
   state funds pursuant to the state racing law where at least five
   of the plaintiffs are residents and property taxpayers, and
   certain plaintiffs are either racetrack bettors or harness horse
   breeders who allege direct harm as a result of amendments to
   the racing law (GCR 1963, 201.2[3]).

2. COURTS—JURISDICTION—JUDGMENT—PRIOR ACTION—COLLATERAL
   ESTOPPEL—CONSTITUTIONAL LAW—STATUTES—STATE RACING
   LAW—ADJUDICATION ON THE MERITS.

   The Court of Appeals does not lack jurisdiction over an original
   action challenging the constitutionality of state racing laws,
   although the statutes in question were held valid by a circuit
   court in a different action brought by at least some of the same
   plaintiffs, where there had been no adjudication on the merits
   of the substantive issues raised in the Court of Appeals action.

3. CONSTITUTIONAL LAW—PUBLIC FUNDS—MISTAKE OF LAW—APPRO-
   PRIATION ACTS—RECOVERY OF FUNDS.

   Public funds paid out due to a mistake of law or prior to a
   judicial determination that the underlying act is unconstitu-
   tional may not be recovered where the funds were paid out
   under a claim of right at the time.

4. MANDAMUS—CONSTITUTIONAL QUESTIONS—STATE OFFICERS.

   A mandamus action may be brought to decide constitutional
   questions where the action challenges the constitutionality of
   legislative enactments which affect the duties of a state officer.

REFERENCES FOR POINTS IN HEADNOTES
[1–3, 10–12] 16 Am Jur 2d, Constitutional Law § 129.
[4] 52 Am Jur 2d, Mandamus § 131 *et seq.*
[5, 8] 16 Am Jur 2d, Constitutional Law §§ 496–501.
[6, 9] 16 Am Jur 2d, Constitutional Law §§ 510, 511.
[7] 16 Am Jur 2d, Constitutional Law § 10 *et seq.*

5. Constitutional Law—Statutes—Classification.

Legislative classification is generally not invalid if it is reasonable, not arbitrary, rests on some valid distinction, and has a fair and substantial relation to the object of the legislation so that all persons within the class are treated alike.

6. Constitutional Law—Legislation—Geographic Classification.

Legislation is not constitutionally invalid simply because it affects only one locality within the state.

7. Courts—Constitutional Questions—Propriety of Legislation —Legislature.

The constitutionality of legislation is a question for the courts; however, the propriety of legislation is for the Legislature.

8. Constitutional Law—Class Legislation.

Legislation must be uniform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary subclassification, it comes within the constitutional prohibition against class legislation.

9. Constitutional Law—Legislation—Local Classifications—Future Members of Class.

Local classifications in legislation must be created so as to include future members who might qualify and the classifications may not be based on existing circumstances only so as to exclude members of the class who might qualify in the future.

10. Constitutional Law—State Racing Law—State Revenues— Stadium Authorities—Time Limitation—Rational Basis— Severability—Statutes.

An appropriation provision of the state racing law which returns state revenues only to stadium authorities organized before December 1, 1971, is unconstitutional because no rational basis exists for distinguishing between stadium authorities created before December 1, 1971, and those created thereafter; however, the remainder of the statute is valid and the time limitation is severable because the limitation is not essentially and inseparably connected to the substance of the act and striking "before December 1, 1971" does nothing to the independence and executability of the remainder of the statute (1972 PA 5; MCLA 431.43[5]; MSA 18.966[13][5]).

11. CONSTITUTIONAL LAW—STATUTES—TITLE-OBJECT PROVISION.

The constitutional requirement that a law shall not embrace more than one object which shall be expressed in its title is met where an act centers on one principal object which the title comprehensively declares and where the provisions in the body of the act not directly mentioned in the title are germane, auxiliary or incidental to that general purpose; the title of an act need not serve as an index of all the act contains.

12. CONSTITUTIONAL LAW—STATUTES—TITLE-OBJECT PROVISION— STATE RACING LAW—FINANCING—LOCAL SPORTS STADIUM— RACE MEETING LICENSES—DISPOSITION OF FUNDS.

A section of the state racing law which provides state financing to a locally situated sports stadium does not violate the title-object clause of the constitution where the title to the state racing law states that the act provides for the disposition of fees derived from race meeting licenses and from wagering on the results of races at licensed race meetings and where the object of the challenged provision is germane to the state purpose of disposing of the funds derived (Const 1963, art IV, § 24, MCLA 431.43[5]; MSA 18.966[13][5]).

Original action in the Court of Appeals. Submitted January 12, 1976, at Lansing. (Docket No. 23814.) Decided March 24, 1976.

Complaint by John Hertel, Jr., and others against the Racing Commissioner, the Department of Agriculture, the State of Michigan, the City of Pontiac, and the City of Pontiac Stadium Authority, seeking mandamus and other relief to cut off state funding of the Pontiac Stadium. Relief denied.

*Zolton Ferency, Robert A. Hudson,* and *Eric S. Wilson,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harry G. Iwasko, Jr.,* Assistant Attorney General, for the

Racing Commissioner, the Department of Agriculture, and the State of Michigan.

*Sherwin M. Birnkrant,* City Attorney, and *Maxine B. Virtue,* Special Counsel, for the City of Pontiac and the City of Pontiac Stadium Authority.

Before: N. J. KAUFMAN, P. J., and T. M. BURNS and M. F. CAVANAGH, JJ.

T. M. BURNS, J. Plaintiffs bring an original mandamus action seeking in effect to have the state funding of the Pontiac Stadium cut off. The complaint requests various forms of relief, including a temporary restraining order, a preliminary injunction, and a permanent injunction against the City of Pontiac and the Pontiac Stadium Authority from spending further appropriations from the Legislature on the stadium; an order of mandamus against state officials from collecting more than 15 percent of wagers; a declaration that the pertinent statutes are unconstitutional; an order that the municipal defendants return appropriations already paid; and other equitable relief.[1]

This is the third legal challenge of the statutes which provide for financial assistance in the construction and maintenance of the Pontiac Stadium.

The conflict involves recent amendments to the state racing law, MCLA 431.31 *et seq.;* MSA

[1] On June 24, 1975, this Court ordered defendants to show cause why the relief sought in the complaint should not be granted, ordered that the motion for temporary restraining order be denied, and further ordered that the motions to dismiss be held in abeyance pending a hearing on the merits. On July 9, 1975, the above order was amended, granting a temporary restraining order against further expenditure of state funds to the City of Pontiac for stadium rentals. On August 19, 1975, the Michigan Supreme Court vacated the temporary restraining order, but refused further jurisdiction in the case. *Hertel v Racing Commissioner,* 394 Mich 838 (1975).

18.966(1) *et seq.* The racing law provides for the regulation and licensing of racing meets and appropriation of funds derived from racing revenue. Under the act, a portion of racing revenue ("deducts") is returned to local government units for recreational purposes. Originally, § 12 of the racing law required racetrack operators to deduct 15 percent of wagers for operators' commissions and contributions to the state's general fund. The state's share of wagers has in the past been put to a number of purposes, primarily racetrack related. Generally, 20 percent would go to the city or township in which the track was located and differing amounts would go to various 4-H, county and state fair expenses, including purses, awards and maintenance of fairgrounds, particularly as those expenses related to horseracing.

The racing law amendment which is of principal interest in this suit is 1972 PA 5. Public Act 5 increased the race meeting licensee's "deduct" from 15 percent to 16-1/2 percent of total wagers and added a section to the racing law [MCLA 431.43(5); MSA 18.966(13)(5)][2] which provides for

---

[2] "A sum equal to not more than 2%, but not to exceed $2,500,000.00, of the principal amount of bonds issued for a stadium and appurtenant parking and other facilities by an authority organized pursuant to state law before December 1, 1971, from the revenue received from thoroughbred and harness racing shall be returned to a county in or adjoining which a licensed track is located or to a city in that county, if that county or city has obligated itself to pay more than 1/2 of the annual rental for a stadium and appurtenant parking and other facilities for the conduct of sporting events, exhibitions and other general recreational purposes. The sum returned shall be used by that county or city, along with other available funds to the extent necessary, only to pay the annual rental to the authority organized pursuant to state law which acquired the stadium and facilities and leased them to that county or city. A sum returned in this manner shall not be specifically pledged for the payment of the rental or for the payment of any bonds issued in anticipation of the rental. Pari-mutuel wagering shall not be conducted on or in any of these stadiums or appurtenant parking or other facilities." Amended by 1969 PA 113, § 1, Imd Eff July 29; 1972 PA 5, § 1, Imd Eff February 5; 1972 PA 329, § 1, Imd Eff January 4, 1973; 1974 PA

sharing a portion of the state's share of wagers with a city or county in or adjoining which a licensed track is located, for the payment of annual rentals on a sports stadium.

Plaintiffs also challenge the validity of various appropriations acts for the payment of rentals on the Pontiac Stadium and 1974 PA 13 which provides for the disposition of certain amounts of the "deduct" deposited in the state's general fund so that such funds may be used to provide financial support for stadium authorities.

*Does this Court have jurisdiction to grant the relief requested?*

A. STANDING:

Lack of standing to sue has been the stumbling block for past legal challenges of state funding of Pontiac Stadium. In *Jones v Racing Commissioner,* 56 Mich App 65; 223 NW2d 367 (1974), a bettor, a taxpayer, and a state representative sought a declaratory judgment and injunction prohibiting enforcement of the racing law as amended by 1972 PA 5. This Court reversed the judgment of the trial court, which found that the act was unconstitutional. We held that the plaintiffs had no standing to sue under GCR 1963, 201.2(3) because there were only three plaintiffs, nor under the common law since there was no showing that any plaintiff would sustain substantial injury or suffer loss.

Under either of the tests of standing recognized in *Jones v Racing Commissioner,* plaintiffs herein have standing to challenge the expenditure of state funds under the racing law as amended. At least five of the plaintiffs are residents and property taxpayers. In addition, certain plaintiffs are either racetrack bettors or harness horse breeders

13, § 1, Imd Eff February 15; 1975 PA 173, § 1, Imd Eff July 20. MCLA 431.43(5); MSA 18.966(13)(5).

who allege direct harm as a result of the racing law amendments. We hold, therefore, that plaintiffs as taxpayers and residents have standing to challenge the expenditure of state funds pursuant to the racing law. As bettors and harness horse breeders, plaintiffs have standing to challenge the legality of § 13 of the racing law as amended.

B. COLLATERAL ESTOPPEL:

Defendants contend that we lack jurisdiction over this action because the various statutes challenged in this suit were held valid by the Wayne County Circuit Court in *Hertel v Governor* (WCCC Docket 74-24551-CZ). This argument is without merit as in the action in the lower court there was no adjudication on the merits of the substantive issues raised.

C. MOOTNESS:

Defendants City of Pontiac and City of Pontiac Stadium Authority are correct in their contention that the issue of the validity of the previous appropriations acts[3] challenged by plaintiffs is moot. Public funds paid out of a mistake of law or prior to a judicial determination that the underlying act is unconstitutional may not be recovered because paid out under a claim of right at the time.[4] This does not, of course, preclude plaintiffs from challenging the statute under which such appropriations have been made.

D. MANDAMUS AS REMEDY:

The Attorney General contends that mandamus is not available in this case because plaintiffs seek to prevent state officers from obeying, rather than following, the law.

---

[3] 1974 PA 226 and 1974 PA 236.

[4] *See e.g. Lemon v Kurtzman,* 411 US 192; 93 S Ct 1463; 36 L Ed 2d 151 (1973). *See generally,* 63 Am Jur 2d, Public Funds, § 7, p 401; 66 Am Jur 2d, Restitution and Implied Contracts, § 144, p 1075.

This action, however, has as its thrust the challenge on constitutional grounds of legislative enactments which affect the duties of a state officer. Mandamus actions may be brought to decide constitutional questions of this nature. *Deneweth v State Treasurer,* 32 Mich App 439, 442; 189 NW2d 10 (1971).[5]

*Does MCLA 431.43(5); MSA 18.966(13)(5) deny plaintiffs equal protection of the laws?*

Plaintiffs contend that the statute creates a classification which is arbitrary and unreasonable. Under the statutory scheme, they argue, only Wayne, Oakland and Jackson counties could get stadium funding and because of the December 1, 1971 time limit, only the Pontiac and Detroit stadium authorities would have been able to benefit. This, plaintiffs argue, is unreasonable discrimination in favor of southeastern Michigan communities and against all other Michigan communities.

Generally, legislative classification is not invalid if it is reasonable, not arbitrary, rests on some valid distinction, and has a fair and substantial relation to the object of the legislation so that all persons within the class are treated alike. *Local No 1644 v AFSC & ME, AFL-CIO Oakwood Hospital Corp,* 367 Mich 79; 116 NW2d 314 (1962).

The classifications challenged by plaintiffs are based upon geographical location of proposed stadia and time of creation of an authority which has undertaken to construct a stadium.

As for the geographical classification, plaintiffs' argument must fail. Legislation is not constitutionally invalid simply because it affects only one locality within the state. See *Tribbett v Village of*

---

[5] *See also e.g. Schwartz v Secretary of State,* 393 Mich 42; 222 NW2d 517 (1974), *Michigan State UAW Community Action Program Council v Secretary of State,* 387 Mich 506; 198 NW2d 385 (1972).

*Marcellus,* 294 Mich 607, 618; 293 NW2d 872 (1940). Nor does the scheme of fund distribution under the pre-amendment racing law upset equal protection standards. *Rohan v Detroit Racing Association,* 314 Mich 326; 22 NW2d 433 (1946). Plaintiffs' true argument against this legislation concerns its propriety, not its constitutional validity. On that point, plaintiffs' complaint is with the Legislature, not this Court. *Wiles v Liquor Control Commission,* 59 Mich App 321, 325; 229 NW2d 434 (1975).

We do find, however, one part of the statute to be constitutionally defective. Appropriations under the act are limited to stadium authorities which were organized before December 1, 1971. As a practical matter, the class created by the act was narrowed by the time limit to one city—Pontiac, as it maintains the only existing stadium authority which was created by that date. There is nothing wrong per se with the fact that one city alone benefits from legislation.[6] But the act creates a class of several members who are entitled to equal treatment. Class legislation must be:

"[U]niform in its operation upon all persons of the class to which it naturally applies; but if it fails to include and affect alike all persons of the same class, and extends immunities or privileges to one portion and denies them to others of like kind, by unreasonable or arbitrary sub-classification, it comes within the constitutional prohibition against class legislation." *Haynes v Lapeer Circuit Judge,* 201 Mich 138, 141–142; 166 NW 938 (1918).[7]

---

[6] Equal protection guarantees are not affronted by legislation which is limited as to the territory within which it is to operate. *McGowan v Maryland,* 366 US 420; 81 S Ct 1101; 6 L Ed 2d 393 (1961).

[7] *See also Davidow v Wadsworth Mfg Co,* 211 Mich 90; 178 NW 776 (1920).

It is generally recognized that local classifications must be created so as to include future members who might qualify and they may not be based on existing circumstances only so as to exclude members of the class who might qualify in the future.[8]

No rational basis has been demonstrated for distinguishing between stadium authorities created before December 1, 1971 and those that may be created thereafter. Such time limitation, therefore, is unconstitutional. We find the provision, however, to be severable;[9] the remainder of 1972 PA 5 is valid.

*Does MCLA 431.43; MSA 18.966(13) embrace more than one object in its title in violation of Const 1963, art IV, § 24?*

Plaintiffs argue that the above section of the racing law is unconstitutional because the title of the statute does not notify the Legislature or the public of the object of providing state financing to a locally situated sports stadium.

Certainly, the title of an act need not serve as an index of all the act contains. If the act centers on one principal object which the title comprehensibly declares and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met. *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

The title with which we are here concerned states that it provides for the disposition of the

[8] *See* 16 Am Jur 2d, Constitutional Law, § 503 and cases cited therein.

[9] The time limitation is clearly not "essentially and inseparably connected" to the substance of the act. *See People v McQuillan,* 392 Mich 511, 542; 221 NW2d 569 (1974). Striking the words "before December 1, 1971" from MCLA 431.43(5); MSA 18.966(13)(5) does nothing to the independence and executability of the remainder of the statute. *Cf. McQuillan, supra,* at 543; 221 NW2d at 584.

fees derived from race meeting licenses and from wagering on the results of races at licensed race meetings. The object of the contested amendments to the racing law is certainly germane to the stated purpose of disposing of such funds, as that is exactly what those acts provide for. The argument is without support.

The relief sought by plaintiffs is denied. No costs.